## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

EUGENE JACOBS,          :    CIVIL ACTION
                            :
        Petitioner,    :
                            :
    v.                :    NO. 07-925
                            :
LOUIS FOLINO,          :
et al.,               :
                            :
        Respondents.   :
_____:

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Eugene Jacobs has filed a _pro se_ Petition for writ of habeas corpus. Jacobs was convicted in the Court of Common Pleas for Philadelphia County by a death-qualified jury of first degree murder, robbery, theft, and related weapons charges. After the jury deadlocked in the penalty phase of his trial, Jacobs was sentenced to a term of life imprisonment, to be served consecutive to concurrent terms of ten to twenty years for the other offenses. In his Petition, Jacobs raises five claims of constitutional error. For the following reasons, I recommend that the Petition be dismissed without an evidentiary hearing and with no certificate of appealability issued.

### I.    FACTS AND PROCEDURAL HISTORY

The facts at trial[1] established that in October 1994,

_____

[1]The facts of Jacob's crimes are taken from the Pennsylvania Superior Court's opinion on Jacob's direct appeal. (Resp. Ex. A.)

Justina Northern attended a party hosted by Darlene Bey, one of her co-workers at the Lafayette Nursing Home. Ms. Bey introduced Ms. Northern to her cousin, the Petitioner, and the two began a close relationship. Ms. Northern spoke by telephone with Donna Parker, her son Darrell's girlfriend, nearly everyday. When Ms. Parker failed to hear from Ms. Northern after January 10, 1995, she became concerned. Darrell tried to contact his mother on January 15, but got no response. He contacted the building supervisor where his mother lived the next day to have him check her apartment. When the supervisor could not access the apartment, he summoned the police. When officers and the supervisor finally entered the apartment, they discovered Ms. Northern's dead body lying on her bed covered by a bed sheet. She had suffered two gunshot wounds to the left side of the head. There was no sign of forced entry, the windows were locked and the blinds were drawn, the door had been sealed on all four sides with clear adhesive tape and locked from the outside. Pillows had been placed against the fresh air intake vents and heat in the apartment had been turned off. Autopsy results determined that she had died sometime between January 9 and 11, 1995. An inventory of the apartment revealed that personal and financial items were missing, as well as Ms. Northern's 1990 gray Subaru Royale automobile.

Following the murder, Petitioner's image was caught on video

tape using Ms. Northern's ATM card to make nine withdrawals and one balance inquiry, withdrawing a total of $490 from her accounts. The video tape also captured the image of a car, similar in design and color to Ms. Northern's missing Subaru, in the background. Jacobs also used the victim's Wanamaker's department store charge card on January 13 and 14, 1995 to make six purchases.

The missing Subaru was located on February 21, 1995, parked six blocks away from an apartment occupied by Jacob's girlfriend, Tanya Vaughn.[2] Vaughn identified the Subaru as the car in which she had ridden with Jacobs, and had seen him driving at least three times since around January 13, 1995.

On February 14, 1995, Jacobs was shown the ATM surveillance photos and given <u>Miranda</u> warnings. He acknowledged his rights, waived his right to remain silent, and gave the police a voluntary statement admitting he had taken and used the ATM card and the Wanamaker's card, that Ms. Northern did not notice the cards were missing, and that he did not have permission to take them. He admitted to using the Subaru in December, 1994, but denied stealing it and claimed not to recognize it in the ATM surveillance photos. He denied killing Ms. Northern. He was released after the questioning, but a warrant for his arrest was

---

[2]The spelling of Ms. Vaughn's last name is not consistent in the record.

issued on April 8, 1995, and he was apprehended on September 14, 1995.

Following his conviction, trial counsel filed a timely notice of appeal, but the appeal was dismissed because counsel failed to file a brief. (Resp. Ex. A at 7.) After Jacobs filed a PCRA petition, his direct appeal rights were reinstated *nunc pro tunc* and he raised three issues to the Pennsylvania Superior Court: 1) an ineffective assistance of counsel claim arising from trial counsel's failure to object to the prosecutor's closing statement characterizing Jacobs as a "Don Juan" and a thief; 2) trial court error in denying Jacob's motion to suppress his pretrial statements; and 3) the verdict of first degree murder was against the weight of the evidence. (Id.; Resp. Ex. D.) In an opinion issued on December 1, 1999, the Superior Court rejected the Petitioner's arguments. Jacobs did not seek review before the Pennsylvania Supreme Court.

On November 30, 2000, Jacobs filed a timely *pro se* petition under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541. (See Resp. Ex. C at 2.[3]) Counsel was appointed and filed an amended petition.[4] (Id.) The PCRA court

---

[3]I note that the certified state court record does not contain a copy of the *pro se* petition.

[4]In the amended petition, counsel argued only that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to investigate alibi witnesses. (Am. Post Conviction Relief Pet. at unnumbered page 2.)

notified Jacobs on July 12, 2002 of its intent to dismiss the petition without a hearing. (Id.) Jacobs filed a *pro se* response.[5] The court denied the petition on October 2, 2002, and Jacobs filed a *pro se* appeal. (Id.) While the PCRA court informed appointed counsel that he remained counsel of record, he never entered an appearance before the Superior Court and Jacobs filed a *pro se* brief raising seven issues: 1) the evidence was insufficient to support the convictions; 2) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to investigate alibi witnesses and the trial court erred in not permitting Jacobs to call alibi witnesses that were known to the court; 3) trial counsel was ineffective for failing to object to the court's reasonable doubt instruction; 4) trial court error in allowing the prosecutor to commit <u>Brady</u> violations[6] and violate Pennsylvania Rule of Criminal Procedure

---

[5]In this response, Jacobs restates the claims he sought to raise in the *pro se* petition that is not in the state court record: 1) appellate counsel was ineffective for failing to assert that trial counsel was ineffective for failing to investigate alibi witnesses; 2) the evidence was insufficient to support a verdict of first degree murder and the other crimes; and 3) trial counsel was ineffective for failing to object to the prosecutor committing <u>Brady</u> violations. (Pet's. Resp. to Notice of Intent to Dismiss.)

[6]This claim involved the application of <u>Commonwealth v. Brady</u>, 507 A.2d 66 (Pa. 1986) (holding that prior inconsistent statements of a nonparty witness who was available for cross examination were admissible as substantive evidence). The PCRA pleadings and decisions and Petitioner's habeas pleadings refer to this issue as a "<u>Brady</u>" claim. It is clear from the context of the PCRA briefs and decisions that Petitioner did not raise a

5

646; 5) trial counsel was ineffective for failing to inform the trial court after the trial that one of the jurors knew Jacobs and other Commonwealth witnesses and disliked Jacobs; 6) appellate counsel was ineffective for failing to raise trial counsel ineffectiveness and for failing to object to perjured testimony; and 7) structural error arising from the failure to disclose helpful evidence to the defense.  (Id. at 3-4.)

The Superior Court remanded the case back to the PCRA court for appointment of new appellate counsel, finding that Jacobs had been denied his state law right to counsel on his PCRA appeal. (Id. at 5.)  Following remand, the PCRA court appointed new counsel, who filed an appellate brief on May 10, 2004.  (Resp. Ex. D at 3.)  Thereafter a four year process of counseled filings, *pro se* filings, remands and appointments of new counsel followed, resulting in Jacob's fourth appointed attorney filing an appellate brief on November 26, 2008 (Resp. Ex. E), followed by Jacobs filing a *pro se* brief requesting another remand to seek new counsel and permission to file a supplemental brief.  (Resp. Ex. D at 3.)  The Superior Court found no basis to order a remand, holding that the supplemental claim Jacobs sought to include, a claim of ineffectiveness of his then current PCRA counsel for failing to assert a claim of actual innocence, was

---

federal law claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

meritless. (Id. at 4-6.)

The Superior Court went on to consider the claims raised in the November 26, 2008 counseled appellate brief, finding no merit to the following claims raised therein: 1) all prior PCRA counsel were ineffective for failing to raise trial counsel's ineffectiveness for failing to properly preserve Jacob's state law claim regarding prior inconsistent statements or request a mistrial or contemporaneous instruction; 2) all prior PCRA counsel were ineffective for failing to raise trial counsel's ineffectiveness for failing to inform the trial court that one of the jurors knew Jacobs and other Commonwealth witnesses; and 3) direct appeal counsel was ineffective for failing to raise and preserve the issue of sufficiency of the evidence. (Resp. Ex. D at 6-7; Resp. Ex. E.)

Jacobs filed a 28 U.S.C. § 2254 habeas petition in this court on March 7, 2007. At that time, Petitioner's state court proceedings had not yet terminated. Judge Baylson stayed the matter and placed the case in civil suspense on April 25, 2007, directing Jacobs to notify the court within 30 days of the termination of his state court proceedings. Rather than simply sending such a notice, Jacobs filed a new § 2254 habeas petition and supporting memorandum of law. By order of January 19, 2010, Judge Baylson ordered the new petition transferred to Civil Action 07-925, removed the case from civil suspense, and referred

the matter to me for the preparation of this Report and Recommendation.

In the latest iteration of his federal petition,[7] Jacobs asserts the following claims: 1) the evidence was insufficient to sustain the conviction because the prosecution admitted it had no evidence that Petitioner was at the crime scene; 2) trial counsel and appellate counsel failed to raise an alibi defense and actual innocence and that the trial court was aware of alibi witnesses who were willing to testify; 3) his <u>Miranda</u> rights were violated because he was not permitted to leave the police station until he had given a statement to the police; 4) "'<u>Brady</u>' violation / 911 radio call withheld"; 5) a juror lied when she stated that she did not know anyone involved in the case and trial and appellate counsel were aware of the juror.  (Pet. at ¶ 12.)[8]

---

[7]The Commonwealth concedes that Jacob's 2009 Petition and supporting Memorandum are the operative pleading and brief. (Resp. at 11.)

[8]In the Memorandum of Law Jacobs filed contemporaneously with the Petition, he includes in the argument headings only the three claims he actually presented in his November 26, 2008 counseled appellate brief, namely:  1) the state courts erred in holding that his layered ineffectiveness claim – that all prior counsel were ineffective for failing to assert that trial counsel was ineffective for failing to properly raise and preserve Jacob's state law claim regarding prior inconsistent statements or request a mistrial or contemporaneous instruction – had no merit; 2) the state courts applied the holding of <u>Strickland v. Washington</u> in an objectively unreasonable manner to explain trial counsel's failure to inform the trial court that one of the jurors knew Jacobs and other Commonwealth witnesses; and 3) the state courts erred in holding that his claim that direct appeal counsel was ineffective for failing to raise and preserve the

## II. AEDPA STANDARD

I analyze these claims under the AEDPA standard for review. Under AEDPA, a petitioner must demonstrate that the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001) (explaining two-prong standard); <u>Williams v. Taylor</u>, 529 U.S. 362, 403-04 (2000) (same). Additionally, state court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). This presumption applies even if the finding was made by a state court of appeals rather than by the state trial court. <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1087 (9th Cir.) <u>amended</u>, 253 F.3d 1150 (9th Cir. 2001).

The Supreme Court has said that "a state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"

---

issue of sufficiency of the evidence had no merit. (Pet. Mem. at i-ii.) However, in the body of the Memorandum, he includes arguments on his <u>Miranda</u> and alibi issues as well. (<u>See</u> Pet. Mem. at 41-48.)

<u>Penry</u>, 532 U.S. at 792 (quoting <u>Williams</u>, 529 U.S. at 405-06.  A state court decision is an unreasonable application of the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. <u>Id.</u>

**III. DISCUSSION**

    a.    Ineffective Assistance for Failure to Raise a Sufficiency of the Evidence Argument

The first claim raised in the Petition and supporting Memorandum is that PCRA counsel was ineffective for failing to argue that direct appeals counsel was ineffective for failing to preserve as an issue on direct appeal that the evidence was insufficient to sustain a conviction.  (Pet. ¶ 12; Mem 39-65.)

    1.    Ineffectiveness of Post Conviction Counsel

The Supreme Court has held that there is no constitutional right to counsel in a post-conviction proceeding and hence there can be no claim for constitutionally ineffective assistance.  <u>See</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987) (establishing that there is no constitutional right to an attorney in state post-conviction proceedings) and <u>Wainwright v. Torna</u>, 455 U.S. 586 (1982) (establishing that where there is no constitutional right to counsel there can be no ineffective assistance of counsel claim); <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991) (citing <u>Finley</u> and <u>Torna</u>); <u>Dunn v. Colleran</u>, 247 F.3d 450, 467

10

(3d Cir. 2001) (citing <u>Finley</u>).  In addition, Congress has mandated that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Because Petitioner can state no claim for habeas relief based on the actions of PCRA counsel, I recommend that this claim be dismissed.

2.    Ineffectiveness of Direct Appeal Counsel

To the extent that this layered claim of ineffectiveness can be recast as a direct claim that appeals counsel was ineffective for failing to raise and preserve the insufficiency argument, the Commonwealth asserts that such a claim is procedurally defaulted because it was not raised during Jacobs' PCRA proceeding.

A.    Exhaustion Doctrine and Procedural Default

The habeas statute requires that prisoners exhaust their claims in state court before seeking relief from the federal courts.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  Absent exceptional circumstances, a federal court may not determine the merits of a habeas corpus petition until the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 3354(b);

O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004). Principles of comity "dictate that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan, 526 U.S. at 844-45. The petitioner bears the burden of proving that he has exhausted available state remedies. Landano v. Rafferty, 897 F.2d 661, 668 (3d Cir. 1990).

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Coleman v. Thompson, 501 U.S. 722,731-732 (1991). A procedural default will be excused if a petitioner can demonstrate cause and prejudice, or that a failure to consider his claims will result in a miscarriage of justice. Id. at 750. To satisfy the cause and prejudice requirement, courts have held that cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker, 393 F.3d at 381 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). The cause must be "something that cannot fairly be attributed to the petitioner." Coleman, 501 U.S. at

753. Prejudice means that the alleged error worked to the Petitioner's actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170 (1982). To show a fundamental miscarriage of justice, a Petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002). To establish the requisite probability of actual innocence, the Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). The United States Supreme Court has repeatedly held, however, that the scope of the miscarriage of justice exception is a narrow one. Sawyer v. Whitley, 505 U.S. 333 (1992); McCleskey v. Zant, 499 U.S. 467 (1991); Dugger v. Adams, 489 U.S. 401 (1989). This exception only applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. The Supreme Court has suggested that the test for actual innocence is whether there is "a fair probability that, in light of all the evidence, including that to have been . . . wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt." Kuhlmann v. Wilson, 477 U.S. 436, 454-5 n.17 (1986).

I recommend that the issue of the ineffective assistance of

appeals counsel is unexhausted.  In making this recommendation, I
note that the state court record provided by the Prothonotary of
the Philadelphia Court of Common Pleas appears to be incomplete.
In its discussion of the history of Jacobs' PCRA proceedings, the
Pennsylvania Superior Court notes that a "nearly four-year
process of counseled filings, pro se filings, remands for, among
other things, <u>Grazier</u> hearings, and appointments of new counsel"
preceded the filing of the counseled appellate brief upon which
the Court eventually ruled.  (Resp. Ex. D at 3.)  The state court
record does not appear to contain Jacobs' pro se filings.[9]

Nevertheless, to the extent that Jacobs argues that the
claim of direct appeal counsel's ineffectiveness was presented in
his original *pro se* PCRA petition (<u>see</u> Pet. Reply at 26), under
state law a petitioner's *pro se* petition or appellate brief is

_____

[9]I note that the state court record provided by the
Prothonotary also does not contain the transcript of Jacobs'
trial.  However the failure to provide the transcript presents no
impediment to completing this Report and Recommendation.  The
facts of Jacobs' crimes are recounted by the Superior Court in
its decision denying Petitioner's direct appeal.  Congress has
provided that "[i]f the State cannot provide such pertinent part
of the record, then the court shall determine under the existing
facts and circumstances what weight shall be given to the State
court's factual determination."  28 U.S.C. § 2254(f).  I
recommend that the Superior Court's recitation of the facts is
entitled to full weight.  While Jacobs takes issue with certain
aspects of the evidence presented against him, he has provided no
factual basis, other than his own statements, to buttress his
assertions.  Also, importantly, as I discuss infra, Jacobs'
ineffectiveness claim centers exclusively upon counsel's failure
to make **arguments** that the Commonwealth's circumstantial evidence
could have supported alternate inferences other than his guilt.

not supplemented by, but rather is replaced by a later filed counseled filing. See Commonwealth v. Pursell, 724 A.2d 293, 301-02 (Pa. 1999) (post-conviction court not required to struggle through *pro se* pleadings where petitioner represented); Commonwealth v. Ellis, 626 A.2d 1137, 1139, 1141 (Pa. 1993) (no right to hybrid representation either at trial or on appeal, and appellate courts not required to consider *pro se* filings or briefs where defendant represented). Consequently, any claims presented in Jacobs' missing *pro se* PCRA filings, but abandoned in his counseled brief to the Superior Court were not properly presented to the state courts.

Because this claim is procedurally defaulted with no showing of cause and prejudice or miscarriage of justice, I recommend that it be dismissed.

### B.   Merits of the Direct Claim

#### 1.   Strickland v. Washington

Although I recommend that the issue is unexhausted, I will also discuss the merits of the claim. The Superior Court, in discussing the derivative claim of PCRA counsel's ineffective assistance for failing to raise appellate counsel's failure to preserve the sufficiency claim, necessarily addressed the merits of the underlying claim in reaching its conclusion that counsel was not ineffective. To the extent that this discussion indicates that the appellate counsel ineffectiveness claim was in

15

fact fairly presented to the state courts and exhausted, I
recommend that the Superior Court's adjudication of the primary
claim was not contrary to nor an unreasonable application of
Strickland v. Washington, 466 U.S. 668, 687 (1984).

In Strickland, the Supreme Court established a two-pronged
test to evaluate Sixth Amendment claims of ineffective assistance
of counsel. An individual making such a claim must show: (1)
that "counsel's performance was deficient," which is measured by
"reasonableness under prevailing professional norms;" and (2)
that counsel's "deficient performance prejudiced the defense."
Id. at 687-90.

The Pennsylvania standard for ineffective assistance, i.e.,
that to show ineffective assistance a petitioner must show that
the underlying claim has merit, that counsel had no reasonable
basis for his conduct, and resulting prejudice (meaning that the
outcome of the proceeding would have been different) see
Commonwealth v. Todaro, 701 A.2d 1343, 1346 (1997), is materially
identical to the test enunciated in Strickland. See Werts v.
Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Therefore, "the
appropriate inquiry is whether the Pennsylvania courts'
application of Strickland to [petitioner's] ineffectiveness claim
was objectively unreasonable, i.e., the state court decision,
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under Strickland." Werts,

16

228 F.3d at 204.

## 2. Jackson v. Virginia

I recommend that the state courts' application of Strickland was not unreasonable because any assertion that the evidence was insufficient, had the issue been preserved on direct appeal, would have been futile. Accordingly, Petitioner cannot satisfy the second Strickland prong.

A claim that the evidence was insufficient to support a conviction is cognizable on habeas review. Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the Court held that the constitutional standard for a sufficiency of the evidence claim "is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. I recommend that the state courts' application of the law was not contrary to Jackson. The Superior Court stated the Pennsylvania standard for sufficiency of the evidence as follows: "viewing the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." (Resp. Ex. D at 12 (quoting Commonwealth v. Pappas, 845 A.2d 829, 835-36 (Pa. Super. Ct. 2004)). I recommend that this statement of the law is indistinguishable from the standard enunciated in Jackson.

The state court's application of <u>Jackson</u> was not
unreasonable.  The factual record that I summarized above shows
that the Superior Court's determination that the Commonwealth
satisfied each of the elements of first degree murder is
irrefutably correct.[10]  The Superior Court, while acknowledging
that the case against Jacobs was largely circumstantial,
concluded that the evidence of guilt was "overwhelming."  (Resp.
Ex. D at 16.)  The court's detailing of the evidence, including
the sealing of Ms. Northern's apartment to delay detection of her
decaying remains, the two fatal gunshots to the head, the theft
and use of her car, ATM and credit cards, and Jacobs' admissions,
was sufficient to show a specific intent to kill in a willful,
deliberate or premeditated way.

Jacobs asserts no meritorious argument to refute this
conclusion.  He argues that direct appeals counsel was
ineffective because he failed to argue that the Commonwealth
presented no eyewitness testimony or direct evidence linking him
to the crime, fingerprints of some other person were found at the
crime scene, and other individuals had keys to Ms. Northern's
apartment.  (Mem. 55-57.)  These assertions are simply inapposite

_____

[10]In Pennsylvania, the elements of first degree murder are:
(1) that a human being was unlawfully killed; (2) that the
accused is responsible for the killing; and (3) that the accused
acted with a specific intent to kill, i.e., in a willful,
deliberate, premeditated way.  <u>Commonwealth v. Pruitt</u>, 951 A.2d
307, 313 (Pa. 2008).

to a proper insufficiency of the evidence argument and would have
been summarily rejected if actually presented on direct appeal.
As I note above, under Pennsylvania law the evidence is viewed in
the light most favorable to the prosecution as the verdict
winner, and the verdict must be sustained if any rational juror
could have found the elements of the crime beyond a reasonable
doubt.  Because the Commonwealth established the elements of
first degree murder, any attempt by appeals counsel to raise a
sufficiency of the evidence argument based upon the lack of
eyewitness testimony, lack of direct (as opposed to
circumstantial) evidence, or evidence suggesting others may have
committed the crime, would have been futile.

Accordingly, to the extent that Jacobs' claim that post
conviction counsel was ineffective can be read to raise the claim
that direct appeals counsel was ineffective (which is
problematic), and to the extent that such a claim was properly
exhausted (which it wasn't), I recommend it has no merit.

b.   Ineffective Assistance for Failure to Raise an Alibi
Defense

The second claim raised in the habeas petition is that trial
counsel and direct appeals counsel were constitutionally
ineffective because they failed to raise an alibi defense.

As I discussed in setting forth the procedural history of
Jacobs' PCRA proceedings, this issue was raised in Jacobs'

counseled amended PCRA petition and was restated in his *pro se* response to the PCRA Court's notice of intent to dismiss the petition, and in his *pro se* brief presented to the Superior Court. (See Footnotes 3, 4, and accompanying text, supra.) However, following remand for the appointment of new counsel, the claim was abandoned when the case returned to the Superior Court. (Resp. Ex. D at 6-7; Resp. Ex. E.)

A claim that is raised in a PCRA petition, but abandoned later in the course of the state court proceedings is not exhausted. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing O'Sullivan, 526 U.S. at 848-49 (holding that to properly exhaust an issue for federal habeas review, it is necessary to raise the issue at all steps of the state review process); 28 U.S.C. § 2254(b)); Sistrunk v. Vaughn, 96 F.3d 666, 671 n. 4 (3d Cir. 1996) ("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court"). As Jacobs abandoned this claim when he failed to reassert it before the Superior Court following the remand, the state remedies available to review the issue were never exhausted and he cannot bring his claim here absent showing cause and prejudice or a miscarriage of justice.

I recommend that Jacobs has not demonstrated cause and prejudice or a miscarriage of justice. In response to the

20

Commonwealth's assertion that the alibi claim was unexhausted, Jacobs stated in his Reply only that "Petitioner has shown cause and prejudice to excuse any default if one has occurred, and again states, a miscarriage of justice would occur if the defaults/ if any, were not disregarded and the merits addressed." (Pet. Reply at 25-26.)  While he discusses prejudice and the miscarriage of justice issues, he offers no specific argument on the cause for his procedural default.  Because he does not show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule, he cannot satisfy the cause and prejudice test.

Jacobs argues that he is actually innocent of the crime and offers as new evidence the alibi evidence that itself forms the basis of the ineffective assistance claim.  Even if his alibi evidence is considered, however, I recommend that he has not demonstrated that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327.  For the same reasons, I recommend on the merits of the claim that counsel cannot be deemed to have been ineffective for failing to present the alibi evidence.

According to Jacobs, alibi witnesses Tanya Vaughn, Darlene Bey and Curtis Chestim would have been willing to testify that he was at the home of Ms. Vaughn all day on January 8, 1995, which would have allegedly refuted testimony from Commonwealth witness

Rorie Richardson that a man answered her mother's telephone.
(Pet. Mem. at 46-48.)  He also claims that his witnesses would
have been willing to testify that he was shopping in North
Philadelphia at the time that one of the ATM transactions
occurred.  (Pet. Reply Mem. at 36.)  This evidence, if accepted
as true, does not constitute a complete alibi, so as to satisfy
either the actual innocence requirement to excuse the procedural
default or to demonstrate ineffective assistance arising from
counsel's failure to present it.

Autopsy results determined that Ms. Northern died sometime
between January 9 and 11, 1995.  Jacobs' whereabouts elsewhere on
January 8, 1995 might refute evidence that he answered the
decedent's telephone, but he was not convicted of answering her
telephone on January 8; he was convicted of committing first
degree murder sometime between January 9 and 11 and his evidence
does not provide an alibi for the crime with which he was
actually charged.  Accordingly, I recommend that Jacobs cannot
show he is actually innocent of the crime charged so as to excuse
his procedural default.  Even if he could excuse his procedural
default, he also cannot demonstrate that counsel was
constitutionally ineffective for failing to present this
evidence.  The alibi evidence that Jacobs contends was improperly
omitted does not undermine confidence in the outcome of his
trial.  I base this recommendation on the fact that the evidence

Jacobs describes could not have provided a plausible alibi.  See Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3d Cir. 1998) (holding that petitioner suffered no prejudice from counsel's failure to call additional alibi witnesses because those witnesses could not provide a complete alibi).

     c.   The Miranda Claim

Jacobs next reasserts a claim that he raised on direct appeal to the Superior Court asserting trial court error in the denial of his motion to suppress his statement to the police.  I recommend that this issue is unexhausted with no showing of cause and prejudice or miscarriage of justice because the issue was never presented to the Pennsylvania Supreme Court at a time when such presentation was a part of the exhaustion requirement.  I also recommend, in the alternative, that the state courts' adjudication of the issue was not contrary to or an unreasonable application of Supreme Court law.

     1.   Exhaustion

The Commonwealth argues that this claim is unexhausted because, although it was presented in Jacobs' direct appeal to the Superior Court, he never filed an allocatur petition raising the issue with the Pennsylvania Supreme Court at a time when filing such a petition was deemed necessary for exhaustion.  I agree.

The Superior Court issued its decision on December 1, 1999.

23

(Resp. Ex. A.)  The Pennsylvania Supreme Court issued an order on May 9, 2000 – after the expiration of the time during which Jacob was required to seek discretionary review – declaring that

> in all appeals from criminal convictions or
> post-conviction relief matters, a litigant shall not be
> required to petition for rehearing or allowance of
> appeal following an adverse decision by the Superior
> Court in order to be deemed to have exhausted all
> available state remedies respecting a claim of error.
> When a claim has been denied relief in a final order,
> the litigant shall be deemed to have exhausted all
> available state remedies for purposes of federal habeas
> corpus relief.  This Order shall be effective
> immediately.

In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000).  "Order No. 218 serve[d] to remove review of criminal and collateral appeals from the 'normal' and 'established' appellate review procedure in Pennsylvania."  Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).  Consequently, following the effective date of the Order, petitioners no longer needed to "seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'"  Id. at 233-34.  Unfortunately for Jacobs, he can find no safe harbor in the issuance of Order No. 218 since its effective date was after the date he was required to seek allocatur.  Because he never fully exhausted the Miranda claim, and for the reasons already stated has not demonstrated cause and

24

prejudice or a miscarriage of justice, I recommend that the claim be dismissed.

        2.   Merits

In the alternative, I recommend that the state court's resolution of the claim was not contrary to or an unreasonable application of Supreme Court law. The Superior Court stated the applicable law as follows:

> Miranda warnings are necessary only where an individual is a suspect in an ongoing investigation and subject to custodial interrogation. . . . A police interview or detention becomes custodial only if an individual is formally arrested or if, "under the totality of the circumstances the conditions and/or duration of the detention becomes so coercive as to constitute the functional equivalent of formal arrest." . . . In determining whether an individual is under formal arrest or in custody for purposes of issuing Miranda warnings, we look to whether an individual is "physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said interrogation.

(Resp. Ex. A at 12-13 (emphasis in original; internal citations to state decisions omitted).) This statement of the law was not contrary to Supreme Court precedent.

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Court held that the Fifth Amendment requires that a person subjected to interrogation while in custody be advised that he has the right to remain silent and the right to have a lawyer present. If questioning takes place and incriminating statements are made absent this procedural safeguard, the statements must be

suppressed. Id.; Saranchak v. Beard, No. 08-9000, slip op. at 16
(3d Cir. Aug. 3, 2010); United States v. DeSumma, 272 F.3d 176,
179 (3d Cir. 2001).

Constitutional protections against self-incrimination under
the Fifth Amendment are triggered only when a suspect is subject
to "custodial interrogation." Thompson v. Keohane, 516 U.S. 99,
102 (1995). Custodial interrogation occurs when law enforcement
officials initiate questioning "after a person has been taken
into custody or otherwise deprived of his freedom of action in
any significant way." Id. (quoting Miranda, 384 U.S. at 444). A
defendant is in custody when a reasonable person in the
defendant's position would perceive that he or she is not free to
leave. Stansbury v. California, 511 U.S. 318, 325 (1994); see
also Berkemer v. McCarty, 468 U.S. 420, 442 (U.S. 1984) (when
determining if a suspect is "in custody," the only relevant
inquiry is how a reasonable person in the suspect's position
would have understood his or her situation). Nothing in the
Superior Court's recitation of the law of suppression is in
conflict with Supreme Court precedent.

I also recommend that the Superior Court application of the
law was not unreasonable. In deciding the "in custody" issue,
the Superior Court found:

> The facts establish that Appellant admits that the door
> was open and unlocked during the interrogation, he was
> not subject to restraint, coercion, or intimidation.
> Moreover, while Appellant thought he was a suspect in

26

the murder of Justina Northern, he did not fear that he
was going to be arrested when he went to headquarters
on February 14, 1995, for questioning.  While he
testified that there came a point in the interrogation
that he <u>thought</u> he <u>might not be allowed to leave</u> and
thought that the door had been locked after the
detective left the room, he can not dispute the fact
that he never was told that he was under arrest, never
was told he was not free to leave, and never was
restrained in any way throughout the interview. . . .
Under the circumstances, a reasonable person would not
have believed he was under arrest.

(Resp. Ex. A at 13 (emphasis in original).)  The Court also found

that Jacobs was permitted to use the restroom when he asked

permission to do so.  (<u>Id.</u>)  On this factual record, which I must

presume to be correct because Jacobs has presented no clear and

convincing evidence to the contrary, <u>see</u> 28 U.S.C. § 2254(e)(1),

the Superior Court concluded that "the facts support the

suppression court's conclusion that Appellant was not in custody

when he gave his oral statements denying involvement."  (<u>Id.</u> at

14.)  I recommend that the factual record amply supports the

Superior Court's legal conclusion that Jacobs was not in custody.

     d.    Ineffective Assistance for Failing to Seek a Mistrial

            Based on Prosecutor's Attempt to Introduce Prior

            Inconsistent Statements of a Nonparty Witness

Jacobs next seeks to assert as a habeas claim that all prior

counsel were ineffective for failing to assert that trial counsel

was ineffective for failing to properly raise and preserve

Jacob's state law claim regarding prior inconsistent statements

or request a mistrial or contemporaneous instruction.[11]

        1.    Cognizability and Exhaustion

    To the extent that Jacobs frames this issue as one of PCRA
court error, (see Mem. at 18 referring to the claim as state
court error in not finding that prior counsel was ineffective),
rather than as a direct claim of ineffective assistance of
counsel, the claim clearly fails because there is no federal
constitutional right to state post-conviction relief. Finley,
481 U.S. at 557 (noting that states have no obligation to provide
postconviction proceedings as an avenue of relief); United States
v. MacCollom, 426 U.S. 317, 323 (1976) (holding "the Due Process
Clause of the Fifth Amendment does not establish any right to an
appeal and certainly does not establish any right to collaterally
attack a final judgment of conviction"). To the extent that "all
prior counsel" include PCRA counsel – the actual claim presented
to the Superior Court and for which Jacobs exhausted his
remedies, (see Resp. Ex. D at 10-11; Resp. Ex. E), that claim too

_____

        [11]I note that in his 2009 Petition, Jacobs recites this
issue as "Brady violation /911 radio call withheld See Memorandum
of Law." (Pet. ¶ 12D.) The section of the accompanying
Memorandum containing Jacobs' arguments on this claim makes no
argument concerning a "911 radio call." His only mention of a
"911 radio call" occurs at the end of his Memorandum, where he
claims that "The evidence against petitioner was not
'Overwhelming, and the police 911 radio call would prove
petitioner is actually innocent of this crime." (Mem. at 62.)
Accordingly, I construe the claim contained in ¶ 12D as raising
the ineffective assistance issue actually discussed in the
accompanying Memorandum. I discuss the "911 radio call"
assertion infra.

28

is not cognizable on habeas review.  <u>See</u> III(a)(1) *supra*.

Unfortunately for Jacobs the claim that can be reviewed at the habeas stage, i.e. a claim that trial counsel and direct appeal counsel were ineffective, is unexhausted with no showing of cause and prejudice or miscarriage of justice.

    2.  Merits

Were I to construe the issue only as one raising an ineffective assistance of trial and direct appeals counsel, and deem the issue to have been raised and exhausted because the Superior Court necessarily had to discuss the issue in adjudicating the derivative claim of PCRA counsel ineffectiveness with which it was actually presented, I would still have to recommend that the claim has no merit because the state court's rejection of the claim was not an unreasonable application of <u>Strickland</u>.

Jacobs framed the issue before the Superior Court as follows:

> During the course of the trial, the Commonwealth introduced testimony from Tanya Vaugn, the appellant's girlfriend to establish that the [sic] extent, if any, of her knowledge of his relationship with the victim and any crimes he may have perpetrated against the deceased.  She had been questioned by Philadelphia Police Department Homicide Detectives about this.  Ms. Vaugn testified that detectives had tried to get her to sign a statement attesting to things that were untrue and that she refused.  She was excused from the proceedings without saying that the statement was her own.  Thus the document was neither adopted or authenticated and was therefore hearsay.  Nevertheless, the prosecutor tried to establish that Ms[.] Vaugn had

in fact made the statements by introducing testimony
from the interviewing detective.  Trial counsel
objected as he should have to the attempt to the
admissible [sic] hearsay that would discredit the
appellant's version of the events.  The objection was
sustained.  However, counsel did not request a mistrial
or curative instructions so as to assure that the jury
was instructed not to draw any adverse inference
against the appellant for what just occurred.

(Resp. Ex. D at 9-10 (quoting Resp. Ex. E).)  The Superior Court

concluded that, given the overwhelming evidence of guilt

presented at the trial and the fact that the objection was

actually made by counsel and sustained by the trial court, "we

cannot say that but for counsel's omission [to request a

mistrial] there is a reasonable probability that the outcome of

the trial would have been different.  As Jacobs cannot establish

prejudice, this claim fails."  (Id. at 10.)

The Court's prejudice analysis was not an unreasonable

application of Strickland.  The prejudice prong requires that a

petitioner demonstrate that counsel's performance actually

prejudiced the defense, thereby rendering the result of the trial

unreliable.  Id. at 687.  It is not enough that petitioner

demonstrate that counsel's errors had some conceivable effect on

the outcome of the proceeding.  Id. at 693.  "Virtually every act

or omission of counsel would meet that test."  United States v.

Valenzuela-Bernal, 458 U.S. 858, 866-67 (1982).  Instead,

petitioner must show that counsel's actions were so

unprofessional that they prejudiced the jury and undermined the

30

outcome.

I recommend that it was reasonable for the Superior Court to conclude that counsel's failure to ask for a curative instruction or move for a mistrial once his objection was sustained was not an action that was so unprofessional that it rendered the result of the trial unreliable. Most significantly, the objectionable hearsay evidence of Ms. Vaughn's alleged statement that the prosecutor sought to introduce was in fact barred because trial counsel raised a timely objection. Thus, the jury heard only Vaughn's disavowal of ever signing the statement that she contended contained untruths, and the hearsay statement was never in fact introduced. The Commonwealth also points out that the substance of the alleged statement, that Vaughn recognized the car in the ATM surveillance photo as the one Jacobs had been driving, was cumulative of other circumstantial evidence proving that Jacobs was the murderer, most notably the photo itself and the ATM records showing that Jacobs had been using the decedent's car and had raided her bank account.

 e. PCRA Court Error; Ineffective Assistance of Trial Counsel in Failing to Inform the Court that a Juror Knew Petitioner and a Commonwealth Witness; Derivative Claims of Appellate and PCRA Counsel Ineffectiveness for not Raising the Issue

The last issue raised in the Petition and Memorandum is a

claim of PCRA Court error, and PCRA counsel ineffectiveness for
failing to preserve direct appeal and trial counsel
ineffectiveness for failing to inform the trial court that one of
the jurors knew Jacobs and a Commonwealth witness.

      1.   Cognizability and Exhaustion

To the extent that Jacobs raises claims of PCRA Court and
PCRA counsel errors, the claims are not cognizable and must be
dismissed for the reasons stated above.  Unfortunately for Jacobs
the claim that can be reviewed at the habeas stage, i.e. a claim
that trial counsel and direct appeal counsel were ineffective in
the manner in which each dealt with the juror issue, is
unexhausted with no showing of cause and prejudice or miscarriage
of justice because he did not fairly present that precise issue
to the state courts.

      2.   Merits

To the extent that his state court claim of PCRA counsel
ineffectiveness can arguably be read to have fairly presented
direct claims that trial counsel failed to raise the juror bias
issue and that direct appeals counsel failed to preserve it, I
recommend that the state courts' adjudication was not an
unreasonable application of the Strickland standard.

In his counseled brief to the Superior Court, Jacobs
asserted that,

> he did not recognize Ms. Holloway [the juror] prior to
> or during the trial, but, that immediately after the

32

trial, he was informed by a Commonwealth witness
(Darlene Bey) that Ms. Holloway knew him, him [sic]
brother, and his cousin.  He said he informed trial
counsel right away.  The appellant claims that he also
advised all subsequent counsel of this fact.

(Resp. Ex. E at 12.)  Responding to the argument, the Superior

Court held, "Apart from this bald assertion, Jacob [sic] offers

no proof to substantiate this claim, such as an affidavit from

Bey, or even how he intends on proving this claim. . . .

Accordingly, this claim fails.  (Resp. Ex. D at 10-11.)  In

making this determination, the Superior Court applied the state

law burden of proof for a PCRA petitioner seeking to base a claim

of ineffective assistance on facts outside of the trial record.

(See Resp. Ex. D at 11 (citing Commonwealth v. Bretz, 830 A.2d

1273, 1276 (Pa. Super. 2003) ("Inherent in this pleading and

proof requirement [of the PCRA] is that the petitioner must not

only state what his issues are, but also he must demonstrate in

his pleadings and briefs how the issues will be proved."))).)

I recommend that the Superior Court's rejection of the claim

because Jacobs did not come forward with supporting evidence was

not an unreasonable application of Supreme Court law.  In Holland

v. Jackson, 542 U.S. 649, 652 (2004), the Court held that whether

a state court's decision was an unreasonable application of legal

principle "must be assessed in light of the record the court had

before it."  Faced with factual assertions completely devoid of

substantiation, the Superior Court's rejection of the claim was

not unreasonable.

In his Reply, Jacobs seeks an evidentiary hearing to show that he can meet his burden. (Reply at 27.) Because Jacobs failed to develop the factual basis of his claim in the state courts, the provisions of 28 U.S.C. § 2254(e)(2) apply:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>     (A) the claim relies on –
>         (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>         (ii) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilt of the underlying offense.

Under this provision of AEDPA, if the factual record was not developed in the state court proceeding, I must consider whether the failure to develop the record is attributable to the petitioner. Taylor v. Horn, 504 F.3d 416, 435-37 (3d Cir. 2007). If the failure to develop the record is attributable to the petitioner, AEDPA prohibits an evidentiary hearing in federal court. Lewis v. Horn, 581 F.3d 92, 104-05 (3d Cir. 2009) (the purpose of § 2254(e)(2) is "to ensure the prisoner undertakes his own diligent search for evidence"); Taylor, 504 F.3d at 437 ("Federal courts sitting in habeas are not an alternative forum

34

for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.")).  The Supreme Court has explained that "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Williams v. Taylor, 529 U.S. 420 (2000).

I recommend that the failure to establish the factual record in state court is attributable to Jacobs.  He argues in his Reply that he was not able to get an affidavit from Darlene Bey because she became ill after Petitioner's trial, never fully recovered, and eventually died.  (Reply at 21.)  He does not, however, offer any substantiation of this assertion, and offers no explanation why he did not provide an affidavit from the juror herself, trial counsel, whom he claims was told by Bey about the juror, or any of the other attorneys with whom he allegedly discussed the issue.  Thus, I am left with Jacobs' bald assertion that the Superior Court improperly considered his factual claims in state court to be a bald assertion.  This is not sufficient grounds for an evidentiary hearing.  See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing" on a habeas petition).

## IV.  MISCELLANEOUS MOTIONS

Finally, also pending are motion by Jacobs for "Release of

documents pursuant to Rule 34 of the Federal Rules of Civil Procedure" (docket entry 12), and for "Financial Assistance and/or Discovery Material" (docket entry 13).  In the first motion, he seeks copies of trial discovery materials including transcripts of police radio calls, witness statements, police property receipts, search warrants and autopsy reports.[12]

While Jacobs recites Fed. R. Civ. P. 34 as the basis for his request, discovery in a habeas proceeding is governed by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts.  Rule 6 provides that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a).  A party requesting discovery "must provide reasons for the request."  Rule 6(b).  Jacobs has not shown good cause. He states only that he needs the documents to support his claims and establish the basis for an evidentiary hearing.  (Motion at 4.)  He does not explain the connection between the categories of documents he requests and the ineffective assistance claims contained in this Petition, nor can I discern any such connection.  I also can discern no connection to his sufficiency of the evidence claim, since that claim is based on counsel's failure to make arguments about the inferences from the evidence,

---

[12]Jacobs also seeks transcripts of pre-trial hearings.  The Commonwealth has agreed to provide these transcripts.

is necessarily limited to the evidence adduced at trial, and not on any additional evidence turned over to the defense during pretrial discovery, but not admitted. Finally, he makes no assertion in the Motion or in his Petition or Memorandum that his alibi claim is dependent upon this material, and his Miranda claim involves only his own statement, which was introduced at trial and the suppression hearing.

In his Motion for Financial Assistance and/or Discovery Material, Jacobs seeks disclosure of "DNA evidence of the fingerprint found at the crime scene along with the Commonwealth witness Wallance [sic] Krajewski's first statement to the police." (Mem. in Support of Motion for Financial Assistance at 2.) He asserts that the Commonwealth has continuously withheld this evidence in violation of Brady v. Maryland. He also seeks authorization to spend $2,500 to hire an investigator to provide him resources to make a good faith claim of cause and prejudice to excuse any procedural default. (Id. at 6-7.)

The Petition contains no Brady claim and no Brady claim was ever raised and exhausted in the state courts. It is a mystery why "DNA evidence of a fingerprint" is relevant to any claim actually raised in the Petition.

Finally, Jacobs offers no good cause to authorize the hiring of an investigator. He makes **no** assertion of cause in his Petition and Memorandum so as to excuse his procedural defaults,

and because I have found the merits of all of his unexhausted claims are also legally deficient, any claim of prejudice is moot.

For all of these reasons, I make the following:

## RECOMMENDATION

AND NOW, this 10th day of August, 2010, IT IS RESPECTFULLY RECOMMENDED that this matter should be DISMISSED without an evidentiary hearing. I further RECOMMEND that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Arnold C. Rapoport

_____
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE